## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MACKENZIE WAGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 23-cv-00440-SH |
| PROPERTY AND CASUALTY | ) | |
| INSURANCE COMPANY OF | ) | |
| HARTFORD, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Before the Court is Plaintiff's motion, seeking partial summary judgment as to liability for her claims of breach of contract and bad faith against Property and Casualty Insurance Company of Hartford ("Hartford").[1]  Because Plaintiff is the moving party and has the burden of proof at trial, Plaintiff must establish that no reasonable factfinder could find for Hartford.  Plaintiff has failed to meet this heavy burden.  The motion will be denied.

### Factual Background

Unless otherwise stated, the following facts are undisputed for purposes of summary judgment:  On July 14, 2022, Plaintiff Mackenzie Wagner was operating a 2006 Lexus GS 300 when she was involved in an automobile accident with an uninsured motorist.  (ECF No. 15-1 ¶ 2; ECF No. 15-2 at 1.[2])  Prior to the accident, Hartford had issued an automobile insurance policy to Plaintiff's grandmother and her husband, Karen and Willard Treat (the "Treats").  (ECF No. 15-3; ECF No. 24-4 (the policy); ECF No. 24-

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a).  (ECF No. 11 at 3.)

[2] References to page numbers refer to the ECF header.

5 at 22 ("Karen Treat . . . confirmed that IV is her granddaughter").[3])  The Treats' policy provided a $100,000 limit on uninsured motorist ("UM") coverage.[4]  (ECF No. 24-4 at 2.)  Under the policy, Plaintiff was a listed driver, and the 2006 Lexus was a listed vehicle.  (*Id.* at 2 & 4.)  However, Plaintiff—not the Treats—had owned the 2006 Lexus since 2020, and it was registered in her name.[5]  (ECF No. 24-2 at 2; ECF No. 24-3.)  Plaintiff was injured from the accident and asserts from $17,979.39 to $18,372.24 in medical expenses.[6]  (ECF No. 15-1 ¶ 4; ECF No. 24-1.)

On July 22, 2022, Plaintiff's counsel provided notice to Hartford that she would be making a UM claim under the policy.  (ECF No. 15-4.)  On March 10, 2023, her counsel sent a copy of medical records and billing and requested Hartford tender policy limits within ten business days.  (ECF No. 15-5.)  On March 22, 2023, Hartford's claim consult-ant Mara Aguilar ("Aguilar") offered to settle Plaintiff's UM claim for $21,800.81.  (ECF No. 15-7.)  Plaintiff rejected the offer and, again, requested policy limits of $100,000.  (ECF No. 15-8; ECF No. 24-4 at 2 (showing $100,000 policy limit).)  On March 27, 2023, Hartford increased its settlement offer to $25,300.81.  (ECF No. 15-9.)

---

[3] In her reply, Plaintiff does not address the additional facts offered by Hartford, and the Court considers those facts undisputed for purposes of Plaintiff's motion.  *See* Fed. R. Civ. P. 56(e)(2); LCvR 56-1(c)-(d).

[4] The policy also provided for $1,000 in Medical Payments ("Med-Pay") coverage.  (ECF No. 24-4 at 2.) The parties agree that all Med-Pay benefits were exhausted by September 6, 2022.  (ECF No. 15 at 3 ¶ 8; ECF No. 24 at 4 ¶ 8.)

[5] Hartford asserts in passing that this deprives the Treats of an insurable interest in the Lexus, voiding coverage.  (ECF No. 24 at 2.)  The Court resolves Plaintiff's motion on other grounds and does not reach this issue.

[6] The parties dispute the amount of medical expenses at issue in this case.  Plaintiff alleges her medical expenses were $17,979.39.  (ECF No. 15 at 2 ¶ 5; *see also* 15-1 ¶ 4.)  Hartford contends Plaintiff's medical bills total $18,372.24 (ECF No. 24 at 3 ¶ 5; *see also* ECF No. 24-1), even while it disputes the necessity of some of those bills (ECF No. 24-5 at 8-9).  This dispute is immaterial to Plaintiff's motion.

Three months passed.  Then, on June 29, 2023, Plaintiff's counsel had a phone call with Aguilar.  (ECF No. 15 at 3 ¶ 16; ECF No. 24 at 6 ¶ 16.)  According to Plaintiff, during the call, Aguilar again declined Plaintiff's demand for policy limits; again offered $25,003.81 to settle the claim; and noted that this was not Hartford's top offer but Hartford would not "bid against" itself.[7]  (ECF No. 15-10.)  At no point during the claim negotiations did Plaintiff request Hartford pay her medical expenses outside of the settlement discussions.  (ECF No. 24 at 8 ¶ 9.)  Further, Plaintiff only submitted medical bills and photographs of her injuries to Hartford; she never submitted information regarding loss of income, inability to work, or future medical expenses.  (*Id.* ¶ 8.)

On September 14, 2023, Plaintiff filed the current lawsuit, alleging breach of contract and bad faith.  (ECF No. 2-1.)  Plaintiff now moves for summary judgment on liability, asserting that Hartford's refusal to pay the "undisputed amount" of her economic damages constitutes *per se* bad faith and that this bad faith necessarily breaches the parties' contract.[8]  (*E.g.,* ECF No. 15 at 1-2.)

## Analysis

### I.    Standard of Review

In a diversity case like this one, summary judgment motions are "governed by the standard found in the Federal Rules of Civil Procedure as applied to Oklahoma's substan-

---

[7] In its response, Hartford only admits that the call occurred, but it does not offer any evidence to controvert Plaintiff's evidence as to the content of the call.  (ECF No. 24 at 6 ¶ 16.)

[8] Hartford asserts that it has now tendered an $18,372.34 check to Plaintiff, which moots her contract claims.  (ECF No. 24 at 2-3.)  Hartford does not attach any evidence showing it actually issued the check, but Plaintiff does not seem to dispute it was issued.  (*See* ECF No. 26 at 1.)  As the Court rejects Plaintiff's motion for summary judgment on other grounds below, it need not rule on Hartford's claim of mootness to resolve the current motion.

tive law." *Taber v. Allied Waste Sys.*, 642 F. App'x 801, 812 n.2 (10th Cir. 2016) (un-published).[9]  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  For a fact to be "material," it must be capable of affecting the outcome of the lawsuit; for the dispute over that fact to be "genuine," a rational jury must be able to find in favor of the nonmoving party.  *Grubb v. DXP Enters., Inc.*, 85 F.4th 959, 966 (10th Cir. 2023).  The Court construes all reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

When the moving party does not have the burden of proof at trial, "it has both the initial burden of production . . . and the burden of establishing that summary judgment is appropriate as a matter of law."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  The moving party can meet this initial burden by either "producing affirmative evidence negating an essential element of the [nonmoving] party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Id.* (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).

However, when the moving party has the burden of proof at trial, "a more stringent summary judgment standard applies."  *Id.*  In these cases, a moving party's showing on

---

[9] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

summary judgment "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (emphasis omitted) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). Stated differently, "the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id.* at 1154 (quoting 11 Moore's Federal Practice - Civil, § 56.40 (3d ed. 2015)). Under this standard, the moving party "cannot force the nonmoving party to come forward with 'specific facts showing there is a genuine issue for trial' merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact." *Pelt*, 539 F.3d at 1280 (alteration omitted) (quoting *Mudrick v. Cross Servs., Inc.*, 200 F. App'x 338, 340 (5th Cir. 2006) (unpublished)). Rather, "the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

## II.   Bad Faith

Plaintiff asks the Court to rule—as a matter of law—that an insurer's failure to promptly pay "undisputed" economic damages is *per se* bad faith. Such an expansion of bad faith liability is not supported by current Oklahoma precedent and is contrary to persuasive Tenth Circuit ruling. The Court will deny Plaintiff's motion.[10]

---

[10] In her reply brief, Plaintiff makes new arguments—e.g., that Hartford committed bad faith by making "lowball" settlement offers (ECF No. 26 at 1)—and attaches new evidence not previously submitted—e.g., the expert report of Richard Cary (ECF No. 26-1). "Rule 56(c) requires the nonmoving party to be given notice and a reasonable opportunity to respond to the movant's summary judgment materials." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). As such, when a party attaches new evidence or makes new arguments in reply, the Court can permit a surreply or decline to rely on the new materials and arguments. *Id.* at 1164-65. The Court chooses the latter.

### A.   Bad Faith Generally

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort . . . ." *Christian v. Am. Home Assur. Co.*, 1977 OK 141, ¶ 25, 577 P.2d 899, 904.  To establish bad faith for delay in payment, a plaintiff must prove that:

> (1) [she] was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the [plaintiff]; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the [her] injury.

*Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶ 21, 221 P.3d 717, 724.

The key inquiry is whether the insurer had a "good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *Buzzard v. McDanel*, 1987 OK 28, ¶ 10, 736 P.2d 157, 159 (emphasis omitted). "Tort liability arises only 'where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.'" *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 16, 998 P.2d 1219, 1223 (quoting *Christian*, ¶ 26, 577 P.2d at 905). "The insurer does not breach this duty by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) (quoting *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 12, 681 P.2d 760, 762); *see also Garnett v. Gov't Emps. Ins. Co. ("GEICO")*, 2008 OK 43, ¶ 22, 186 P.3d 935, 944 ("It is not a breach of the duty of good faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim.").

Whether an insurer breaches its duty to act in good faith depends on the facts and circumstances of each case. *GEICO v. Quine*, 2011 OK 88, ¶ 15, 264 P.3d 1245, 1249. "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact . . . ." *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶ 21, 637 P.2d 583, 587.

### B.   Plaintiff Has Not Shown Bad Faith as a Matter of Law

Oklahoma has long held that, when "the likely worth of the claim exceeds the liability limits, prompt payment [under the uninsured policy] must be offered." *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, ¶ 30, 824 P.2d 1105, 1112. In this case, it is undisputed that Hartford offered Plaintiff payment under the policy in March 2023—albeit in the form of a settlement offer. Plaintiff, however, refused to accept the offer and has insisted on the payment of policy limits, or $100,000.

Plaintiff does not assert that the delay was too long between her original contact with Hartford in July 2022 and its first offer of payment in March 2023.[11] Instead, Plaintiff's claim is based on Hartford's failure to make an unconditional partial payment on the policy to compensate for the claimed medical expenses, even when the parties were approximately $80,000 apart in resolving the full policy claim.

An offer to settle an insurance claim can satisfy an insurer's obligation to promptly investigate and evaluate a claim. *See, e.g., Reeder v. Am. Econ. Ins. Co.*, 88 F.3d 892, 896 (10th Cir. 1996) (finding offer to settle and an evaluation of a claim "are not mutually

---

[11] Although not material to the current motion, the evidence submitted by Hartford indicates that it was taking various actions to address the claim from July 2022 through March 2023. (ECF No. 24-5 at 12-38.) In any event, it appears Plaintiff first offered evidence of her damages in March 2023. (ECF No. 15-5.)

exclusive" and an insurer's actions were timely as a matter of law when it made its settlement offer just over three months after a determination of liability).  This does not mean that all settlement offers are shielded from a bad faith claim.  In certain circumstances, a reasonable jury could decide that an insurer's withholding of an undisputedly due payment until a claimant signed a release of other claims could be bad faith.  *See, e.g., Hatfield v. Liberty Mut. Ins. Co.*, 98 F. App'x 789, 794 (10th Cir. 2004) (unpublished).[12]  But, there is a difference between actions that could, in certain factual circumstances, constitute bad faith and those that must, in all circumstances, be deemed bad faith as a matter of law.

The Oklahoma Supreme Court addressed a similar situation in *Garnett v. GEICO*, 2008 OK 43, 186 P.3d 935.  In that case, the insurer valued the plaintiff's underinsured motorist claim at $1,000 to $3,000.  *Id.* ¶ 4, 186 P.3d at 939.  The insurer then offered to settle the plaintiff's claim for $1,000, then $2,000, and finally $3,000.  *Id.* ¶¶ 4-5.  (The plaintiff offered $15,000 and later $14,000 to settle.  *Id.* ¶ 5.)  The plaintiff asserted that the last offer of $3,000 was an "undisputed amount" that the insurer must pay without a full settlement of his claim and brought a bad faith claim for the failure to pay this amount, as well as breach of contract.  *Id.* ¶ 6.  The district court granted summary judgment to the insurer on the bad faith claim, leaving only the contract claim for trial.  *Id.*  At trial, the jury valued the plaintiff's uninsured motorist claim at $5,000.  *Id.* ¶ 9, 186 P.3d at 940.  On appeal, the Oklahoma Supreme Court upheld the grant of summary judgment on bad faith, finding the insurance claim was legitimately disputed.  *Id.* ¶ 23, 186 P.3d at 944.  "Because a legitimate dispute existed between the parties as to the value of the UIM claim,

---

[12] In *Hatfield*, the undisputed claim related to UIM coverage on one vehicle, while the disputed claim related to whether the claimant could "stack" UIM coverage from another vehicle.  *Id.* at 790-91.

the trial court did not err by granting summary judgment to the insurer on the issue of whether the insurer's failure to tender the 'undisputed amount' constituted bad faith." *Id.*

In 2011, the Oklahoma Supreme Court revisited this issue. *See GEICO v Quine*, 2011 OK 88, 264 P.3d 1245. In *Quine*, the District Court for the Western District of Oklahoma attempted to certify to the Oklahoma Supreme Court the very question at issue in this case.[13] The state court, however, declined to address the question as asked and reformulated it as follows:

> Does an insurer's refusal to unconditionally tender partial payment of UIM benefits amount to a breach of the obligation to act in good faith and deal fairly when (1) the insured's economic/special damages have been fully recovered through tortfeasor's liability insurance; (2) the insurer promptly investigates and places a value on the claim; (3) there is a legitimate dispute regarding insured's noneconomic/general damages; and (4) benefits due have not been firmly established?

*Id.* ¶ 1, 264 P.3d at 1246. Having reformulated the question in this manner, and adhering to the rule of law announced in *Garnett*, the court found such a refusal did not constitute bad faith. *Id.* ¶ 20, 264 P.3d at 1251. In making this decision, the court noted other jurisdictions that have "declined to impose liability on an insurer for failing to make partial or advance payment of UIM or UM claims." *Id.* n.8, 264 P.3d at 1250 n.8. The court also, however, noted the distinction between economic/special damages and noneconomic/general damages to be "especially germane under the facts of" the case before it. *Id.* ¶ 19.

> GEICO's refusal to issue an advance payment on Watkins' UIM claim presents a scenario far different than one involving a request for partial payment needed to satisfy unpaid medical expenses, lost wages, or other

---

[13] "If an uninsured/underinsured ("UM/UIM") insurer and its insured are unable to agree upon an overall settlement of the insured's UM/UIM claim and the insured demands payment of any undisputed benefits, does Oklahoma law require the UM/UIM insurer to promptly evaluate and unconditionally (i.e., without requiring a full and complete release) pay its insured any 'undisputed amount' it determines it owes?" *GEICO v. Quine*, No. CIV-08-1140-C, slip. op. at 1 (W.D. Okla. Nov. 16, 2009).

economic/special damages—cases where the impact of the loss is direct, immediate, and measurable with reasonable certainty.

*Id.* (citing Idaho case where insurer's refusal to advance partial payment of mounting medical bills resulted to damages to credit, embarrassment, stress, and depression).  In the end, however, the court did not explain the significance of this distinction and did not—even in dicta—say that the refusal to issue advance payment on economic damages would constitute *per se* bad faith.  Instead, the Oklahoma Supreme Court held in the case before it that the insurer's refusal to pay the undisputed portion of a disputed claim did not constitute bad faith.

In the 13 years since *Quine*, the Oklahoma Supreme Court has not returned to this issue.  Plaintiff has cited no cases after *Quine* that have examined the economic-noneconomic distinction and found that an insurer commits bad faith by refusing to pay the undisputed portion of a disputed claim when that undisputed portion includes economic damages.  Instead, decisions in this district and at the Tenth Circuit have found otherwise.  *See Tran v. Nationwide Mut. Ins. Co.*, 524 F. App'x 391, 394-95 (10th Cir. 2013), *aff'g* No. 11-CV-0374-CVE-FHM, 2012 WL 380359, at *5 (N.D. Okla. Feb. 6, 2012); *Higgins v. State Auto Prop. & Cas. Ins. Co.*, No. 11-CV-90-JHP-TLW, 2012 WL 2126820, at *4 (N.D. Okla. June 12, 2012).

In *Tran*, the Tenth Circuit addressed the following factual scenario:

Ms. Tran argues that Nationwide's delay in paying her undisputed economic damages was unreasonable and constitutes bad faith. We disagree. In late August 2010, Ms. Tran's lawyer sent Nationwide a packet of information that included some medical bills and records. In the enclosure letter, Ms. Tran's lawyer demanded that Nationwide "tender [Ms.] Tran's *policy limits* within thirty (30) days of receipt of this letter."  As the district court found, within a week of receiving Ms. Tran's demand for the policy limits, Nationwide "made a settlement offer ... approximately $3,000 more than the amount of [her] economic damages. Within one week of the initial offer, [Nationwide] made a second offer ... approximately $7,000 more than the

amount of [her] economic damages. [Her] attorney rejected these offers by telephone."

524 F. App'x at 394.  The Tenth Circuit then rejected the plaintiff's argument that, under *Quine*, "an insurer's failure to unconditionally tender payment for the undisputed amount of the insured's economic damages is bad faith."  *Id.* at 394 n.1.  As a result, the Tenth Circuit held that it was not only proper for the district court to <u>deny</u> summary judgment to the plaintiff but that summary judgment <u>in favor of the insurer</u> was "proper."  *Id.* at 394-95.  The Court finds the reasoning of the Tenth Circuit in *Tran*, as well as the reasoning of the district court decision it affirms, to be persuasive.

Here, Plaintiff has failed to show that a reasonable trier of fact would necessarily find Hartford acted in bad faith.  On March 10, 2023, Plaintiff's counsel submitted various medical records and demanded policy limits of $100,000.  (*Supra at* 2.)  Within 12 days, Hartford offered to settle for over $3,400 more than the high estimate of Plaintiff's claimed economic damages.  (*Id.*)  Plaintiff again demanded $100,000, and Hartford increased its offer to almost $7,000 more than the economic damages.  (*Id.*)  Plaintiff has offered no evidence from which a jury could find that Hartford did not legitimately dispute Plaintiff's non-economic damages.[14]  Further, the summary judgment record reflects that Plaintiff never came down from her policy demand;[15] never specifically explained why she is entitled to the full $100,000 policy limit; and never sent Hartford

---

[14] The most Plaintiff points to is a letter in which her counsel describes her bruising and swelling (without attaching the pictures it describes) and a notation in Hartford's files that it had increased its "UMBI evaluation up to $35,872/24, based on large bruises to both leg and heavy impact to IV."  (ECF No. 15-8; ECF No. 24-5 at 10-11.)  Plaintiff does not assert that the low end of Hartford's evaluation increased, nor does she explain how this requires a finding, as a matter of law, that Hartford acted in bad faith by offering no more than $21,800.81 or $25,003.81.

[15] In fact, the Hartford's claim notes reflect that Plaintiff's counsel told Aguilar that he "does not negotiate UM claims."  (ECF No. 24-5 at 8-9.)

any information showing that she suffered lost wages, future medical expenses, or an inability to work. (*Supra* at 3.)

Thus, the record reflects that a legitimate dispute arose regarding the value of Plaintiff's claim. (*See also* ECF No. 24-5 at 7-10 (Hartford claim notes discussing why Aguilar believed Plaintiff's claim was not a policy limits case).) Without any precedent suggesting otherwise, Hartford was not legally obligated under Oklahoma law to pay the undisputed portion of Plaintiff's claim. *See Tran*, 2012 WL 380359, at *6 (concluding that "the mere fact that plaintiff had outstanding medical bills did not obligate defendant to unconditionally tender partial payment of the claim"). Plaintiff has failed to show she is entitled to summary judgment on her bad faith claim.

### III.    Breach of Contract

Plaintiff argues, "It is axiomatic that in matters where no insurance payment has been made, such as here, once bad faith has been established as a matter of law, so too has . . . a breach of contract . . . occurred." (ECF No. 15 at 5.) Setting aside whether this is in fact an axiom, no bad faith has been established, and Plaintiff's argument fails.

IT IS THEREFORE ORDERED that Plaintiff's *Motion for Partial Summary Judgment on Liability* (ECF No. 15) is DENIED.

ORDERED this 3rd day of July, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT